Timothy W. **GRIGGS** and Catherine H. Griggs, Individually and as Parents and Natural Guardians of Zachary Griggs, a Minor, Plaintiffs,

v.

**BIC CORPORATION, Defendant.**

Civ. A. No. 1:CV–90–2125.

United States District Court,
M.D. Pennsylvania.

March 1, 1994.

Richard B. Swartz, Caldwell & Kearns, Richard C. Angino, Joseph M. Melillo, Angino & Rovner, P.C., Harrisburg, PA, for plaintiffs.

Bradley Davis Miller, David E. Turner, Bingaman, Hess, Coblentz & Bell, Reading, PA, Harwood Lloyd, Michael B. Oropollo, Harwood Lloyd, East Brunswick, NJ, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

We are considering Plaintiffs' motion for a new trial under Fed.R.Civ.P. 59 and Defendant's motion for sanctions under Fed. R.Civ.P. 11. We exercise jurisdiction over this case according to 28 U.S.C. § 1332.

### I. Facts and Procedural History

On October 11, 1985, a fire in the apartment of Timothy and Catherine Griggs caused extensive damage and injured their then–11–month old son, Zachary. The parties agree that Zachary's stepbrother, Kenneth Hempstead, then almost four-years-old, started the fire. Plaintiffs claim that Kenneth played with a butane lighter he found in his stepfather's pocket. Further, they argue that the lighter was manufactured by Defendant, BIC Corporation ("BIC") and that it was defectively designed.[1]

Before trial, Defendant offered several motions *in limine* and Plaintiffs offered one.

We declined to rule on Plaintiffs' motion, indicating rather that we would consider objections to particular evidence as they arose.[2] The case went to trial on October 25, 1993. After hearing considerable evidence, the jury returned a verdict in favor of Defendant on October 29, 1993, finding that Plaintiffs had not proved by a preponderance of the evidence that Kenneth had used a BIC lighter to ignite the fire in question. On November 4, 1993, Plaintiffs filed the current motion for a new trial. That motion is now ripe for disposition. On November 24, 1993, Defendant filed a motion for sanctions according to Fed.R.Civ.P. 11. That motion, too, is fully briefed.

### II. Law and Discussion

Plaintiffs' motion relies principally upon four grounds: (1) that the Court committed error in admitting certain defense testimony, (2) that the great weight of the evidence was against the verdict, and (3) that the Court committed error in not allowing Plaintiffs to elicit opinions from their witnesses, and (4) that the Court committed error in not allowing Plaintiffs to question their experts about other fires alleged to have been ignited with BIC lighters. We will consider these grounds *seriatim*.

#### A. Admission of Defense Testimony

Plaintiffs argue that the Court erroneously admitted testimony elicited solely for the purpose of portraying Mr. and Mrs. Griggs in a negative light.

As a threshold matter, we note that in almost all instances cited by Plaintiffs, there was no timely objection made to the testimony. Fed.R.Evid. 103 mandates

**(a) Effect of erroneous ruling.** Error may not be predicated upon a ruling which

1. The complaint asserted causes of action for both negligence and strict liability according to Restatement (Second) of Torts § 402A. On Defendant's motion for summary judgment, we entered judgment on both counts against Plaintiffs. *See Griggs v. BIC Corp.*, 786 F.Supp. 1203 (M.D.Pa.1992) (Caldwell, J.). On appeal, the United States Court of Appeals for the Third Circuit affirmed the judgment as to strict liability but reversed and remanded as to negligence.

*See Griggs v. BIC Corporation*, 981 F.2d 1429 (3d Cir.1992).

2. *See, e.g.,* Transcript at 407:

MR. ANGINO: Your Honor, we have filed a motion in limine with respect to this particular witness.
THE COURT: I'll rule on the testimony as the question is raised.

admits or excludes evidence, unless a substantial right of the party is affected, and

**(1) Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

\* \* \* \* \* \*

**(d) Plain error.** Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

■ Plaintiffs argue that their *in limine* motion sought to exclude evidence offered only to cast aspersions on their characters. As noted, however, we declined to rule on the motion, deferring decisions until the evidence was offered in context. *See, supra,* n. 2. As such, the motion *in limine* did not serve as a proper objection because there was no ruling. *Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 767–68 (3d Cir.1989). Plaintiffs were required to offer their objections as they became appropriate at trial. Thus, to the extent this argument is premised upon testimony to which Plaintiffs failed to object, and because there was no plain error, we find the objections waived. Fed.R.Evid. 103.

■ Plaintiffs first argue that it was error to admit evidence that Mr. and Mrs. Griggs used matches on occasions before the fire, that Kenneth had played with matches before the fire, and that the Griggs were careless prior to the fire at issue.

Plaintiffs offer no citation to the record for their contention regarding testimony as to their use of matches before they moved to the home on Berryhill Street in Harrisburg, Pennsylvania, in which the fire occurred. They do, however, point to testimony regarding their alleged use of matches at the Berryhill home just prior to the fire. Louise Russell, a neighbor of the Griggs when they lived on Berryhill Street, testified that she babysat for the Griggs children in August, September, and October, 1985, just before the October 11, 1985, fire.

Q And on all those occasions were you inside their house babysitting?

A Yes.

Q Do you know if Mr. and Mrs. Griggs were smokers at that time?

A Yes.

Q Did you observe them smoking?

A Yes.

Q Did you observe what they used to light their cigarettes?

A Yes.

Q What was that?

A Matches.

Q And when you would babysit over the course of August and September and October, up until October 10, did you see anything inside the apartment of the Griggs that they used to light their cigarettes?

A Yes.

Q Okay, what did you see?

A Matches.

Q Where did you see those?

A They were just laying around.

Q Did you ever see any Bic lighters in their apartment?

A No.

Q Are you a smoker yourself?

A No.

Q When was the last time before the fire that you were inside the Griggs home?

A Maybe a week before.

Q And was that the time that you went over to babysit?

A Yes.

Q While you were there did you notice whether or not there were matches present?

A Yes.

Q Where did you see the matches on that occasion?

A They were laying in the front room.

Transcript at 394–96. Another neighbor, Debra Arnold, testified as follows:

Q Did you have occasion to observe Tim and Cathy Griggs smoking?

A Yes.

Q Where were they when you observed them?

A On the front porch and in the back yard.

Q How often over the course of the two or three months prior to this fire did you observe them smoking outside the front or back?

A Just about everyday.

Q During that period of time did you notice what they used to light their cigarettes?

A Matches and a lighter.

Transcript at 402–03.

In her direct testimony, Mrs. Griggs had indicated that she had removed all matches from the house after finding Kenneth with some neighborhood boys who were playing with matches. *See* Transcript at 359. Plaintiffs characterize the Russell and Arnold testimony, and other similar evidence, as inadmissible evidence of prior bad acts to show conformity therewith, in violation of Fed. R.Evid. 404(b).

We note first that Plaintiffs failed to object to either the Russell or the Arnold testimony. Thus, any objection other than plain error was waived. Further, the evidence was offered in Defendant's case-in-chief and was clearly for the purposes of contradicting and impeaching Mrs. Griggs' testimony on a material issue—namely, whether there were matches in the Griggs residence. There was no error in this regard.

■ Plaintiffs also take exception to testimony that Kenneth had started fires on occasions prior to the fire. We presume this to refer to the testimony of Ms. Russell and of Ms. Arnold.[3] Ms. Russell testified as follows:

Q Are you aware of any prior incidents in which Kenny; that is, Kenneth Hempstead had burned anything or started any fires?

A Yes.

Q Okay, could you tell the jury what you know of the prior instance?

A Well, I had come over to Cathy's house one day, and she had said that Kenny set the couch on fire.

Q Did you actually see him do it?

A No.

Transcript at 396. Ms. Arnold testified as follows:

Q From the time that the Griggs moved into 1428 [Berryhill Street] and prior to October 10 when this fire occurred, did you have occasion to observe Kenneth Hempstead with matches or other fire starting materials?

A Yes.

Q Will you describe to the jury what you had observed?

A Well, I—he wasn't supervised well at all, and he'd be out back, and I'd look out back and have to keep an eye on him somewhat because I knew that he wasn't being watched the way he should have been.

MR. ANGINO: Your Honor, could she answer the question, please.

A And—

BY MR. TURNER:

Q Just direct your response—

A I saw him on the back porch there. The porch is about like a cement block wide, sitting there with matches, playing with them.

Transcript at 401–02. Again, Plaintiffs failed to object. Finding no plain error, we conclude that Plaintiffs waived any objection they might have had. Fed.R.Evid. 103.

■ Finally, Plaintiffs contend that certain defense testimony was offered only to depict them as careless, in violation of Fed.R.Evid. 404. They primarily point to the testimony of their landlady at the Berryhill residence, Elizabeth Khan. Defense counsel questioned Ms. Khan regarding a number of issues, including the condition of the Griggs residence.

Q Would you tell me what the condition of the apartment was when Mr. and Mrs. Griggs moved in?

---

**3.** As we discuss Plaintiffs' arguments, we note that Plaintiffs' brief does not clearly set forth their arguments and make appropriate reference to the record. As such, it is difficult to be sure precisely to what testimony they refer. *See, e.g.* Brief in Support at 6.

MR. ANGINO: Your Honor—

THE COURT: I'll sustain the objection.

\* \* \* \* \* \*

Q During your inspections to the property what did you observe with regard to maintenance?

MR. ANGINO: Your Honor, objection.

THE COURT: Sustained.

BY MR. TURNER:

Q Did you observe any problems with regard to fire or smoke safety equipment at the apartment?

A Yes. On one occasion we had seen that the smoke detector in that apartment had been disconnected.

Transcript at 409–10. Each time Plaintiffs objected, we sustained the objection. Thus, we can perceive no error. Further, with regard to the testimony about the smoke detector, Plaintiffs failed to offer an objection; as such, any objection is now waived.

Ms. Khan also testified that she served an eviction notice to the Griggs in August, 1985. Plaintiffs objected. *See* Transcript at 411. We did not rule on the record, but spoke to counsel at sidebar and advised defense counsel to limit his question to the issue of the smoke detector, rather than the more general issue of the condition of the apartment. Thereafter, Defendant asked the following question:

Q Mrs. Khan, was the fact that the smoke detector had been disconnected a grounds for your giving the eviction notice and your intention to terminate the lease?

A Yes it was. It was in violation of City code.

Transcript at 411. There were no further objections to this line of questioning. We find no error; Plaintiffs objected to testimony about the eviction notice and we sustained the objection in part and limited the testimony.

■ Plaintiffs also point to another portion of Ms. Khan's testimony.

Q During your visits to the premises did you ever observe any child-resistant or child safety type devises such as caps on electrical outlets or locks on cabinet doors?

MR. ANGINO: Objection, Your Honor.

THE COURT: Sustained.

Transcript at 413. Plaintiffs maintain that, despite the objection having been sustained, the jury heard the question and undoubtedly presumed the answer would have been detrimental to Plaintiffs' case. We disagree. We sustained the objection as soon as it was made; further, if Plaintiffs had a concern that too much of the objectionable question had been heard by the jury, they should have requested that we strike the question from the record and direct the jurors to ignore it. No such request was made.

■ Finally, Plaintiffs object to Defendant's questioning Ms. Khan about an occasion when she found the Griggs children unsupervised.

Q Did you have occasion during your visits to the premise[s] to observe whether the children were supervised, were there or not there?

MR. ANGINO: Objection.

THE COURT: Overruled. I'll allow that question.

A There was at least one occasion, and I do not recall the date. I know it was sometime during the summer prior to her having the newborn where we had— my husband and I had come to the apartment to collect rent and we had knocked on the door.

We heard the baby in there crying. Nobody came. We waited around for approximately ten, fifteen minutes, at which time they had finally come from one of the properties across the street and came to the house, and the two children were in the apartment alone.

Transcript at 413–14. Again, Plaintiffs argue that this evidence should not have been admitted because of the "prior acts" prohibition of Fed.R.Evid. 404(b). That rule mandates as follows:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admis-

sible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In essence, Rule 404(b) requires exclusion of evidence of a past act if the only reason for its proffer is that it tends to suggest that the actor acted in a similar way in a material situation. The evidence may, however, be offered for some other reason, including those enunciated in the rule.

A hypothetical is helpful. Assume P brings suit against D, alleging that D became intoxicated, negligently drove his automobile, and struck P as he was walking on a sidewalk. If P offers testimony from a tavern owner that he saw D drink to the point of inebriation two weeks earlier; and the only purpose of the testimony is to suggest that, having done it once, D was more likely to have been intoxicated on the night of the accident; the evidence must be excluded according to Rule 404(b). However, if D argues that he did not know that drinking large quantities of alcohol causes intoxication, P may introduce the tavern owner's testimony to prove that D had *knowledge* of the effect of alcohol.

The exception to the general principal of Rule 404(b) is that evidence of habit may be introduced to prove that a party's conduct was in conformity with the habit on a material occasion. Fed.R.Evid. 406.

A habit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, ...

Fed.R.Evid. 406 advisory committee note, *quoting* Edward W. Cleary, McCormick on Evidence § 162 (1972). Returning to the hypothetical, if the tavern owner testified that D invariably stopped by the tavern on his way home from work, and invariably drank to excess, the testimony would be admissible to prove that D was intoxicated on the night of the accident.

Having established the legal framework for the admission of character evidence, we turn to the disputed testimony. In essence, Ms. Khan testified that, on one occasion prior to the fire, she and her husband had discovered that the Griggs children were unattended for as long as 15 minutes. Defendant, of course, argues that the testimony was properly admitted.

Moreover, lack of parental supervision was relevant to the issue of causation. Plaintiffs raised this issue through their own testimony that Kenneth Hempstead had set fires with lighters and matches prior to the subject incident, and through their expert, Dr. [John] Kreifeldt, when he testified that approximately 600,000 children could have readily operated the lighter that the Griggs' [sic] claimed it was feasible for BIC to manufacture and market in 1985.

Brief in Opposition at 18. If we could ignore Fed.R.Evid. 404, this argument would be entirely reasonable. Had the jury reached the question of whether the BIC lighter was defectively designed, one issue it would have had to consider was whether BIC had a duty to guard against ignition by a child given substantial time to explore the lighter's ignition mechanism. The jury could have concluded that BIC's duty was to guard against a child who had only a few moments to examine the lighter; thus, evidence that Mr. and Mrs. Griggs had left Kenneth unsupervised for long periods might have broken the causal chain between any design defect and the Griggs fire. However, we cannot ignore Rule 404. In this case, Ms. Khan testified that she observed poor parental supervision on one occasion prior to the fire. To offer such testimony to raise an inference that the Griggs left Kenneth alone for a protracted period on the morning of the fire is to do precisely that which Rule 404(b) forbids.[4]

---

4. Defendant's argument would be valid if the testimony were that Mrs. Khan saw the children by themselves *on the morning of the fire.* Had this been the testimony, Rule 404(b) would not have been implicated.

Defendant suggests that the testimony was proper to impeach the testimony of Mr. and Mrs. Griggs. There are, of course, a number of ways to impeach the testimony of a witness, including offering contradictory testimony. However, our review of the testimony of both Mr. and Mrs. Griggs indicates that neither suggested in any way that their children were carefully supervised. Further, even if they had so testified, Fed.R.Evid. 608(b) rejects the use of extrinsic evidence to attack the credibility of a witness.[5] Another appropriate method of impeaching a witness is to offer evidence of the witness' reputation for truthfulness in the community. Fed. R.Evid. 608(a). The challenged testimony was not of this variety.

■ We must, then, agree with Plaintiffs that it was error for us to overrule their objection to Ms. Khan's testimony about the prior incident of parental absence. That determination, of course, requires an examination of the effect of the error on the trial.

■ Fed.R.Evid. 103(a) explains that an evidentiary ruling may only be reversible error if it affects a "substantial right" of the party. In the Third Circuit, the test for harmless error requires a court to inquire whether it is "highly probable" that the error did not affect a party's substantial rights. *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 924–28 (3d Cir.1985); *see also, Lippay v. Christos,* 996 F.2d 1490, 1500 (3d Cir.1993); *Advanced Medical, Inc. v. Arden Medical Systems, Inc.,* 955 F.2d 188, 199 (3d Cir.1992) (referring to the "highly probable" test as "rigorous"). In gauging the appropriate standard for determining when it is "highly probable" that evidence did not affect substantial rights, we take guidance from *Government of the Virgin Islands v. Toto,* 529 F.2d 278 (3d Cir.1976), the criminal case

that set the "highly probable" standard in this circuit and that *McQueeney* followed in setting the civil standard.

> [A]n appellate court realistically has three options in choosing a standard for reviewing trial error. The reviewing court might affirm if it believes: (a) that it is *more probable than not* that the error did not affect the judgment, (b) that it is *highly probable* that the error did not contribute to the judgment, or (c) that it is *almost certain* that the error did not taint the judgment.

529 F.2d at 284 (emphasis original). The Third Circuit chose the second option. Because the first, and least rigorous, standard is essentially a preponderance · of the evidence standard and the third, and most rigorous, standard is akin to a clear and convincing standard; we presume that the appropriate standard requires something more than a preponderance but less than clear and convincing evidence.

Certainly, the credibility of Mr. and Mrs. Griggs played an important role in the jury's verdict. Both testified that the only ignition sources in the home on the morning of the fire were BIC lighters. Therefore, for the jury to find, as it did, that the Plaintiffs failed to prove that the fire was started with a BIC lighter, it would have had to find the Griggs unworthy of credibility. Further, we note that the jury focused on the question of product identification and never reached the issue of causation.

Because of the ultimate resolution of the case, we regard as particularly important evidence on two issues: whether the fire began with matches and whether Mr. and Mrs. Griggs' testimony was credible.

---

5. We do not follow the logic of Defendant's argument that:
> Plaintiffs' reliance on Rule 608(b) which prohibits proof by extrinsic evidence of past conduct of a witness for the purpose of attacking his or her credibility, is unfounded. Rule 608(b) is inapplicable in determining the admissibility of evidence introduced to impeach a witness's testimony as to a material issue.

Brief in Opposition at 16, *citing Lamborn v. Dittmer,* 873 F.2d 522, 527–28 (2d Cir.1989). We do not read *Lamborn* to support Defendant's proposition. *Lamborn* noted that it is proper to admit extrinsic evidence on a material fact which, in that case, was whether a witness knew about the fraudulent execution of loan documents. *Id.* at 528. The corollary in this case would be if Ms. Khan had visited the Griggs home *the morning of the fire* and seen the children unattended. The fact that the children were unsupervised on some occasion before the fire does not fairly raise an inference that Kenneth was unattended on the day of the fire.

Aside from the testimony already cited, there was additional testimony that supported BIC's match-ignition theory. Ms. Russell, the neighbor who said she had seen matches in the Griggs home, also testified that she saw Kenneth being interviewed by a fire fighter while the fire was being extinguished.

Q   Did you hear either the fireman or Kenny say anything at that time?

A   The fireman had asked Kenny how did he start the fire, and he said with matches, and he was striking his hand. (Indicating)

Q   He made a movement with both hands one over the other in a striking motion?

A   Right, he was making a motion. (Indicating)

Transcript at 399.

Chief Michael Bownaze, of the Harrisburg Fire Department, testified that he believed the fire was started with either matches or a lighter. Transcript at 70. He further testified that he searched the scene and could find no remnants of a lighter. Transcript at 68–70.

Trooper John Lotwick, a Pennsylvania State Police fire marshal, testified that he interviewed Kenneth 13 days after the fire and that the boy told him he had started the fire with a lighter, although he did not describe it. Transcript at 56.

On the other hand, Kenneth himself testified that he used a lighter. Transcript at 212–13.[6] He indicated that he took the lighter from his father's pants pocket, went into his bedroom, and attempted to light several cheese puffs while they were resting on a pair of pants. He testified that he "lit it and they caught the whole place on fire." Transcript at 212. On cross-examination, Defendant asked Kenneth to repeat his version

three times and the boy's testimony remained consistent.[7]

There were several witnesses whose testimony challenged the Griggs' credibility. A social worker from the Francis Scott Key Medical Center in Baltimore, where Zachary Griggs was taken after being burned in the fire, testified from her notes of an interview with Mr. and Mrs. Griggs the day of the fire.

A   The parents state that they were at home with Zachary when the fire occurred. Mrs. Griggs had gotten up earlier to fix breakfast for the three-and-a-half-year-old son and then gone back to sleep. Apparently this son, Kenny, began to play with matches and lit Zachary's mattress on fire.

Transcript at 578. A social worker for Dauphin County Children and Youth Services testified that she spoke with Mr. and Mrs. Griggs five years after the fire. She read from notes she made at the time of the visit.

A   According to Mr. and Mrs. Griggs Kenny was accused of setting the fire. Neither Mr. nor Mrs. Griggs feel that he did actually do it.

Q   Is that information what was told to you by the Griggses?

A   To the best of my knowledge, yes.

Transcript at 425. The notes of the social worker, Deborah Balmer, were admitted into evidence without objection. Finally, Defendant questioned Mr. Griggs about his earlier assertion that the fire began in faulty wiring.

Q   One other thing. At one point in time you made statements that you were going to sue the owner of the house for faulty wiring. Correct?

MR. ANGINO: Your Honor, that's totally irrelevant. There's no question of faulty wiring. I object.

THE COURT: Overruled. I'm going to allow the testimony.

---

**6.** Defendant objected that Kenneth was incompetent to testify because he was younger than four years old at the time of the fire and more than eight years had passed by the time of the trial. After a short hearing outside the hearing of the jury, we found Kenneth competent to testify. Transcript at 209. We determined that the issues of the child's age at the time of the fire and the considerable passage of time were for the

jury to consider in weighing Kenneth's testimony.

**7.** Ironically, Defendant describes the fact that Kenneth remained consistent as evidence of coaching. Of course, had Kenneth been inconsistent, Defendant would argue that his testimony was not credible.

A  I didn't say I was suing anybody, but I said about faulty wiring, yes.

BY MR. OROPOLLO:

Q  Well, that was—Let's see.

A  This is long after the fire that I made this statement.

Transcript at 385. Mr. Griggs testified that he spoke to a lawyer about a possible claim against the landlord, although he briefly suggested that while the alleged faulty wiring was related to the fire, it was not the cause. Transcript at 386.

Having reviewed the testimony, we must ask if it is "highly probable" that the erroneous admission of Ms. Khan's testimony that the Griggs children were unsupervised on one occasion did not contribute to the judgment.[8] It is impossible, of course, for us to surmise what affected the jury's determination. However, having reviewed the entire transcript, we do not conclude that the error sufficiently tainted the verdict to warrant a new trial. There was considerable testimony that went *directly* to the questions of whether Mr. and Mrs. Griggs were credible and whether the ignition source was a BIC lighter. The Khan testimony was directed toward causation (*i.e.*, whether BIC could have guarded against a fire given a child with substantial time to explore the lighter) and only *incidentally* impugned Mr. and Mrs. Griggs' characters. We find it highly likely that the jury focused on the more direct testimony.

B. *Weight of the Evidence*

Plaintiffs contend that the overwhelming weight of the evidence was against the verdict and that we should therefore grant a new trial.

■ We begin with an initial observation. Plaintiffs include with their motion four affidavits, sworn to *after* the trial, by Mr. and Mrs. Griggs and two of their neighbors. The affidavits suggest that Louise Russell was an "enemy" of the Griggs because they had accused her of stealing money from them and that, therefore, her testimony was biased. Plaintiffs offer no explanation for their failure to offer testimony of any such antipathy at trial.

■ It is appropriate to consider new evidence in the context of a motion for a new trial only where the evidence was discovered following trial and was not discovered earlier even though counsel acted with due diligence. *See Treadwell v. Kennedy*, No. 88–2958, 1991 WL 255609 at *4, 1991 U.S.App. LEXIS 28733 at *10 (7th Cir. Dec. 2, 1991). In the instant case, the evidence of hostility between the Griggs family and Ms. Russell clearly existed before trial and was known to Mr. and Mrs. Griggs, both of whom testified at trial. Had Plaintiffs wished to discredit Ms. Russell's testimony, the appropriate opportunity was in rebuttal, not in a motion for a new trial. Further, the "new evidence" merely seeks to suggest bias on the part of a witness; it does not affect directly a material issue in the case. As such, we will not consider those affidavits.

■ A challenge to the sufficiency of the evidence bears a heavy burden. In a diversity-jurisdiction case such as this, we apply the federal standard for examining the sufficiency of the evidence. *Kinnel v. Mid–Atlantic Mausoleums, Inc.*, 850 F.2d 958, 961 (3d Cir.1988). We must view the evidence in the light most favorable to the verdict winner and ask if it was minimally sufficient to support the verdict. *Rotondo v. Keene Corp.*, 956 F.2d 436, 438 (3d Cir.1992).

■ In a preceding section of this memorandum, we reviewed at some length the evidence regarding the possibility that the fire at issue was attributable to a BIC lighter. Viewing the evidence in the light most favorable to Defendant, we find that the evidence was sufficient to support a defense verdict on the issue of product identification.[9]

---

8. In doing so, we recall that the neighbor, Ms. Arnold, also testified to seeing Kenneth unsupervised (and playing with matches). The jurors heard this testimony without objection.

9. In their argument regarding sufficiency of the evidence, Plaintiffs reiterate an argument we find puzzling:

Plaintiffs have also asked that BIC be compelled to produce its factual investigation file. A decision on Plaintiffs' motion is still pending.

## C. *Plaintiffs' Experts' Opinions*

■ Plaintiffs argue that we sustained an objection that prevented them from questioning their fire expert on a key issue. That witness was Trooper Lotwick, the Pennsylvania State Police fire marshal. Plaintiffs qualified Trooper Lotwick as an expert in the causes and origins of fires. He testified that he interviewed Kenneth Hempstead 13 days after the fire and the boy told him he had used a lighter to start the fire. The testimony in question went as follows:

Q And did you believe him, that he used a lighter?

A Yes.

MR. TURNER: Objection.

THE COURT: We'll ask the jury to disregard the officer's belief. Strike that testimony.

MR. TURNER: Thank you, Your Honor.

BY MR. ANGINO:

Q Officer, from your investigations of these child play fires where you've basically talked to children of different ages, have you learned the art of whether or not the child is at least to you telling the truth or not?

MR. TURNER: Objection, Your Honor.

THE COURT: Objection sustained.

MR. TURNER: Thank you, Your Honor.

MR. ANGINO: Your Honor, I then have no further questions.

Transcript at 48–49.[10] There was no error in excluding the testimony. Trooper Lotwick was qualified as an expert in fire origin, not in child interviewing. *See* Transcript at 38–44. Indeed, most of his testimony with regard to his credentials centered on training to examine the physical remnants of fire scenes. He never indicated that he had attained expertise in interviewing children and assessing their credibility. As such, we determined under Fed.R.Evid. 702 that he was not qualified to offer an opinion about Kenneth's credibility. Further, it is generally inappropriate for a witness to judge the credibility of another witness. *See United States v. Daileda,* 229 F.Supp. 148, 153 (M.D.Pa. 1964) (Nealon, J.) (noting that credibility determinations are within the province of the jury); *United States v. Scop,* 846 F.2d 135, 142–43 (2d Cir.1988) (noting that Fed.R.Evid. 705 does not overcome unfairly prejudicial effect on jury). Plaintiffs now claim that Trooper Lotwick was qualified to testify to the child's credibility because interviewing children is part of his investigative work. Had he so testified at trial, he might have overcome the lack of qualification; he would not have overcome the general proscription against witnesses judging one another's credibility. There was no error.

## D. *Plaintiffs' Examination of Their Experts With Regard to Other BIC Fires*

■ Plaintiff argues that we erred in precluding their questioning their expert witnesses about Consumer Product Safety Commission ("CPSC") reports of other fires started with BIC lighters. Plaintiffs offer only a single paragraph to explain their argument and offer just one reference to the record;

---

Plaintiffs believe that the full investigation file will demonstrate that the overwhelming factual evidence supports Plaintiffs' conclusions, and that BIC could obtain the result it wanted only by being very selective in its choice of defense witnesses and, in particular, omitting those with the most direct knowledge of Plaintiffs' smoking habits, such as Sharon and Randolph Saunders, and by calling those individuals with open hostility towards the Plaintiffs, such as Louise Russell. While BIC may be entitled to present its defense in this way, Plaintiffs believe that the interests of justice are served by adding the weight of the factual investigation file to the weight of the evidence produced at trial, and thereby demonstrating that the vast weight of the evidence supports their position.

Brief in Support at 15 n. 3. We denied the motion to compel by order of December 22, 1993. Plaintiffs' statement suggests a misunderstanding of the procedural posture of the case. Plaintiffs had a long discovery period in which to seek evidence to build a record that would favor their claims. To seek to build that record post-trial is simply inappropriate.

**10.** Plaintiffs assert that we likewise precluded them from questioning Chief Bownaze of the Harrisburg Fire Department about the veracity of Kenneth's claim. We have read the transcript of his testimony in its entirety and find no reference at all to whether Chief Bownaze believed Kenneth's version of events. Thus, we will consider only the quoted portion of Trooper Lotwick's testimony, although our analysis would be the same.

without their guidance, we can only speculate about the nature of their contention.

The witness on the stand at the portions of the transcripts Plaintiffs have cited was their expert Langston Bate, Jr. Plaintiffs sought to have Mr. Bate testify about certain CPSC reports of lighter fires and whether they were provided to manufacturers, like BIC, before the date of the Griggs fire. *See* Transcript at 313–340. There was only one defense objection that we sustained, and that was to Plaintiffs' counsel questioning Mr. Bates about the details of each incident recorded in the CPSC reports. We allowed Plaintiffs to question him generally about whether those reports put BIC on notice of a large number of child-play fires involving BIC lighters, but limited the testimony in the interests of trial efficiency. *See* Fed.R.Evid. 403. We can find no error. Plaintiffs were allowed to establish the point they sought to establish.

E. *Defendant's Rule 11 Motion*

 Defendant seeks sanctions under Fed.R.Civ.P. 11 against Plaintiffs' counsel. That rule holds that any court document signed by an attorney carries with it his assurance that

> after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

The court, upon finding a Rule 11 violation, may assess sanctions against the attorney at fault. The standard is an objective one; whether a reasonable attorney would have acted in a particular way. *Chambers v. NASCO Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Bradgate Associates v. Fellows, Read & Associates,* 999 F.2d 745 (3d Cir.1993).

Defendant's theory in bringing the motion is that Plaintiffs misrepresented the record in their motion for a new trial and improperly offered the four affidavits that we referred to earlier. We agree that, in certain respects, Plaintiffs' arguments misconstrued the record. We do not, however, find evidence that any such confusion was deliberate. Further, the four affidavits, while inappropriately filed, do not warrant a sanction. And,

of course, our long discourse regarding Mrs. Khan's testimony makes clear that Plaintiffs' motion, as a whole, was not baseless. We will deny Defendant's motion.